IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NATIONWIDE MUTUAL
INSURANCE COMPANY,                              *

     Plaintiff,                                   *

v.                                               *        Civil Action No.: RDB 07-209

NICOLE DENISE NASH, *et al.*,                    *

     Defendants.                                  *

*    *    *    *    *    *    *    *    *    *    *    *    *

## <u>MEMORANDUM OPINION</u>

     This case arises from the tragic death of two-year old  Kaiya Alexis Bryant, who died after she was struck by a van driven by her daycare provider.  Following the settlement of related state court litigation, Plaintiff Nationwide Mutual Insurance Company ("Plaintiff" or "Nationwide") filed this declaratory judgment action against Defendants Nicole Denise Nash, individually and in her capacity as the Personal Representative of the Estate of Kaiya Alexis Bryant, James T. Bryant, and the Estate of Kaiya Alexis Bryant (collectively, "Defendants"). The Complaint asks this Court to resolve an insurance coverage dispute, *i.e.*, whether Kaiya's death is covered under the daycare provider's homeowner's policy.  Currently pending are the parties' cross-Motions for Summary Judgment.  (Paper Nos. 6 & 8.)  This Court has jurisdiction pursuant to 28 U.S.C. § 1332 (diversity of citizenship) and 28 U.S.C. § 2201 (declaratory judgment action).  A hearing on the pending motions was conducted on June 4, 2007.  For the reasons that follow, Plaintiff's Motion for Summary Judgment is GRANTED and Defendants' cross-Motion for Summary Judgment is DENIED.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

**A.     Factual Background.**

For purposes of this declaratory judgment action, the parties have stipulated to the

following facts:

Pursuant to the Settlement and Release Agreement reached by the Parties, Nationwide Mutual Insurance Company (hereinafter "Nationwide") and Nicole Denise Nash, individually and in her capacity as the Personal Representative of the Estate of Kaiya Alexis Bryant, James T. Bryant, individually and the Estate of Kaiya Alexis Bryant hereby stipulate to the following facts in connection with the Declaratory Judgment Action to be filed in the United States District Court for the District of Maryland:

1.      Nicole Denise Nash is a resident of Upper Marlboro, Maryland in Prince George's County and is the duly appointed Personal Representative of the Estate of Kaiya Alexis Bryant, her deceased daughter who died December 15, 2004.

2.      James T. Bryant, Jr., is a resident of Baltimore, Maryland and is the Father of his deceased daughter, Kaiya Alexis Bryant.

3.      Sherry Campbell-Heim (hereafter "Mrs. Campbell-Heim") is a resident of Edgewood, Maryland in Harford County and at all times pertinent thereto was the licensed and registered owner and operator of a home care service/child care service at her residence at 2412 Beaver Crossing Court.

4.      Nationwide is an insurer which is incorporated in the state of Ohio with its principal place of business in Ohio.

5.      At all times pertinent hereto, on December 15, 2004 at and about 2412 Beaver Crossing Court, Edgewood, Maryland, the deceased, Kaiya Alexis Bryant, born on October 13, 2002 (hereinafter referred to as "the child") was in the care and custody of the homecare/child provider, Mrs. Campbell Heim.

6.      At all times pertinent hereto, Mrs. Campbell Heim, in her capacity as the child care provider for Kaiya Alexis Bryant, owed the child certain duties, among them but no limited to knowing where the child was at all times; protecting the child's safety, health and life; supervising and overseeing the movements of the twenty-six month old child; and keeping the child out of harm's way and away from dangerous and unsafe situations and environs.

7.      On December 15, 2004, Mrs. Campbell-Heim loaded her van with five of her six charges, placing each in a car seat but overlooking her sixth and youngest charge, Kaiya Alexis Bryant, whom she left unattended and without supervision in the roadway.

8.      For purposes of the coverage litigation only, it is stipulated that contrary to the duties owed to Kaiya Alexis Bryant, Mrs. Campbell-Heim was negligent and careless in several respects, including the following:

      a.      Failing to know where Kaiya Alexis Bryant was at all times pertinent hereto.

      b.      Failing to supervise and oversee the movements of the 26 month old child.

      c.      Failing to keep the child out of the roadway unattended.

      d.      Failing to keep the child out of harm's way.

Kaiya Alexis Bryant, who was left unattended in the roadway at 2412 Beaver Crossing Court, Edgewood, Maryland, was struck by Mrs. Campbell-Heim's vehicle causing serious bodily injuries that ultimate [sic] proved to be fatal.  The impact between the vehicle operated by Ms. [sic] Campbell-Heim and Kaiya Bryant occurred in the roadway of Beaver Crossing Road in a community/public thoroughfare.  Kaiya Bryant was struck by this motor vehicle operated by Ms. Heim.  There are no tortfeasors, other than Ms. Heim, who caused or contributed to the accident.

9.      For purposes of the coverage litigation only, it is agreed that as a direct and proximate cause of the acts and omission of Mrs. Campbell-Heim actions, Kaiya Bryant suffered emotional distress, pre-impact fright, and great physical pain prior to her death and incurred medical and funeral expenses.

10.     No negligence on the part of the twenty-six month old child, Kaiya Bryant, contributed to her injuries, losses, damages and death.

11.     It is agreed that for purposes of the coverage litigation only that it will be agreed that said acts of Mrs. Campbell-Heim constitute negligence.

12.     At the time of the accident, Mrs. Campbell-Heim was insured under a Nationwide Automobile Policy, Policy No. 52 19 A 924755 (the "Automobile Policy"). . . .  The parties stipulate that Nationwide has paid the full $100,000.00 policy limits of the Nationwide Automobile Policy.  At the time of the accident, Mrs. Campbell-Heim had a Nationwide Homeowner's Policy, Policy No. 52 19 HO 6327749 (the "Homeowner's Policy"). . . .  The parties disagree as to whether or not coverage exists for Kaiya Bryant's death under the Homeowner's Policy. There is a genuine dispute between the parties as to whether there is coverage for this claim relating to Kaiya Bryant's death under the Homeowner's Policy.

(Compl. Ex. 1 ("Stipulation of Facts").)

**B.**     **Insurance Policies.**

The relevant provisions of the insurance policy at issue are found in Nationwide

Homeowner's Policy, Policy No. 52 19 HO 6327749.  (*See* Compl., Ex. B (the "Homeowner's

Policy").)  The "residence premises" covered by the Homeowner's Policy is listed as "2412

Beaver Crossing Road, Edgewood, Maryland 21040-1324."  (Homeowner's Policy, Declarations

at p. 1.)  Merrill Heim, the husband of Kaiya's daycare provider Sherry Campbell-Heim, is listed

as the named insured on the policy.  (*Id*.)  Finally, the policy period is listed as "May 23, 2004 to

May 23, 2005."  (*Id*.)  Kaiya's death occurred within that period on December 15, 2004.

The Homeowner's Policy provides the following liability coverage:

> COVERAGE E — PERSONAL LIABILITY
>
> **We** will pay damages an **insured** is legally obligated to pay due to an **occurrence**
> resulting from negligent personal acts or negligence arising out of the ownership,
> maintenance or use of real or personal property . . .

(Homeowner's Policy at p. G1 (emphasis in original).)  The term "**insured**" is defined as "**you**

and the following persons if residents of **your** household at the **residence premises** . . . **your**

relatives. . . ."  (*Id*. (emphasis in original); *see also id*. at A1.)  The term "**occurrence**" is defined

as "**bodily injury** or **property damage** resulting from an accident, including continuous or

repeated exposure to the same general condition." (*Id*. at G1 (emphasis in original).)

The Homeowner's Policy also contains a Home Care Services Coverage endorsement

that provides the following coverage:

> SECTION II — LIABILITY COVERAGES
>
> Section II — Liability Coverages - Personal Liability and Medical
> Payments to Others, apply to **bodily injury** and **property damage**
> arising out of home care services provided by or at the direction of
> an **insured** on or from the **residence premises**.

(Defs' Mem. Supp. Summ. J. Ex. C ("Home Care Services Endorsement") at p. 1 (emphasis in

original).)  The term "**bodily injury**" is defined as "bodily harm, including resulting care, sickness or disease, loss of services or death."  (Homeowner's Policy at G1.)

Finally, the Homeowner's Policy contains the following exclusion:

> Coverage E — Personal Liability . . . [does] not apply to **bodily injury** . . .
>
> g)    arising out of the ownership, maintenance or use of, or loading or unloading of; entrustment or negligent supervision by an **insured** of; or statutorily imposed liability on an **insured** related to the use of: . . .
>
> (2)    a **motor vehicle** or all other motorized land conveyance owned by or operated by, or rented or loaned to an **insured**.

(Homeowner's Policy at p. H1 (emphasis in original).)  The term "**motor vehicle**" is defined as "a motorized land vehicle or conveyance, including motorized bicycles or mopeds, designed for travel on public roads or subject to **motor vehicle** registration."  (*Id*. at A1 (emphasis in original).)

## C.    Procedural History.

On January 23, 2007, Plaintiff filed a Complaint against Defendants in this Court.  On March 12, 2007, Plaintiff filed its Motion for Summary Judgment.  (Paper No. 6.)  On March 28, 2007, Defendants filed their cross-Motion for Summary Judgment.  (Paper No. 8.)  On June 4, 2007, this Court conducted a hearing to address these motions.

## JURISDICTION AND STANDARD OF REVIEW

There is no dispute that the parties are citizens of different states and the matter in controversy exceeds $75,000.  Thus, this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.  Even though this Court possesses jurisdiction, however, federal courts have discretion to decline to exercise jurisdiction over a declaratory judgment action pursuant to the Federal Declaratory Judgment Act ("the Act"), 28 U.S.C. § 2201 and Fed. R. Civ. P. 57.  Specifically, the Act provides in part:

> In a case of actual controversy within its jurisdiction, . . . any court
> of the United States, upon the filing of an appropriate pleading,
> *may* declare the rights and other legal relations of any interested
> party seeking such declaration, whether or not further relief is or
> could be sought.

28 U.S.C. § 2201(a) (emphasis added).  In this case, there is no question that this declaratory

judgment action will serve to declare the rights of the respective parties and resolve the

controversy giving rise to the proceeding.  Accordingly, this Court will exercise jurisdiction over

this declaratory judgment action.  *Id.*; *see also Aetna Casualty & Surety Co. v. Quarles*, 92 F.2d

321, 325 (4th Cir. 1937) (finding that 28 U.S.C. § 2201 gives district courts the discretionary

authority to grant relief "(1) when the judgment will serve a useful purpose in clarifying and

settling the legal relations in issue, and (2) when it will terminate and afford relief from the

uncertainty, insecurity, and controversy giving rise to the proceeding.") (internal quotation

marks and citation omitted).

     As noted above, the parties have stipulated to all facts and filed cross-Motions for

Summary Judgment.  Summary judgment is appropriate under Rule 56(c) of the Federal Rules of

Civil Procedure when there is no genuine issue as to any material fact, and the moving party is

plainly entitled to judgment in its favor as a matter of law.  "[W]here the record taken as a whole

could not lead a rational trier of fact to find for the non-moving party, disposition by summary

judgment is appropriate."  *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119

(4th Cir. 1991).  When both parties file motions for summary judgment, the court applies the

same standards of review.  *Taft Broad. Co. v. United States,* 929 F.2d 240, 248 (6th Cir. 1991);

*ITCO Corp. v. Michelin Tire Corp.,* 722 F.2d 42, 45 n.3 (4th Cir. 1983) ("The court is not

permitted to resolve genuine issues of material fact on a motion for summary judgment – even

where . . . both parties have filed cross motions for summary judgment.") (emphasis omitted),

*cert. denied,* 469 U.S. 1215 (1985).  The role of the court is to "rule on each party's motion on an individual and separate basis, determining, in each case, whether a judgment may be entered in accordance with the Rule 56 standard." *Towne Mgmt. Corp. v. Hartford Acc. & Indem. Co.,* 627 F. Supp. 170, 172 (D. Md. 1985).

## DISCUSSION

As discussed at the hearing, this case turns on two issues.  First, the validity of the exclusion for automobile-related injuries in the Homeowner's Policy under Maryland law.[1] Second, if the exclusion is valid, this Court must address whether there was coverage under the Homeowner's Policy.

## I.    Validity of Exclusion.

The parties dispute whether the Homeowner's Policy exclusion for automobile-related injuries is valid under § 19-106 and § 19-202 of the Insurance Article of the Maryland Code.[2] (*See generally* Pl.'s Mem. Supp. Summ. J. pp. 8-10; Defs' Mem. Supp. Summ. J. pp. 3-7.)

Section 19-106 of the Insurance Article provides:

> **Liability coverage—For family day care providers**.  An insurer that issues or delivers a policy or contract of motor vehicle liability insurance in the State *shall offer* to provide to a policyholder, who is registered as a family day care provider under Title 5, Subtitle 5, Part V of the Family Law Article, *coverage* in at least the amount required under § 17-103 of the Transportation Article *for liability*

---

[1]    When presented with choice-of-law questions, Maryland courts ordinarily follow the rule of *lex loci contractus*, which provides that the construction of a contract be determined by the law of the state where the contract was made.  *See Commercial Union Ins. v. Porter Hayden Co.*, 698 A.2d 1167, 1199 (Md. Ct. Spec. App. 1997), *cert. denied*, 703 A.2d 147 (Md. 1997); *Allstate Ins. Co. v. Hart*, 611 A.2d 100, 101 (Md. 1992).  The parties agree that the contract was made in Maryland, and that, therefore, Maryland law governs the interpretation of the Homeowner Policy's provisions.

[2]    As Defendants note in their papers, as of January 1, 2007, § 19-202 of the Insurance Article of the Maryland Code was renumbered as § 19-203.  This Memorandum Opinion follows the parties' papers in referring to the provision as § 19-202.

> *that results from bodily injury*:
> (1)   to a family day care child while the child is a passenger in
>         an automobile; and
> (2)   that arises out of an insured's activities as a family day care
>         provider.

Md. Code Ann., Ins. § 19-106 (West 2007) (emphasis added); *see also Gallegos v. Allstate Ins.*

*Co.*, 816 A.2d 102, 103 (Md. 2003) ("Section 19-106 requires insurers who write *motor vehicle*

insurance in the State to offer certain minimum coverage to policyholders who are registered as

family day care providers. . . .") (emphasis in original).

Section 19-202 of the Insurance Article provides:

> **Liability coverage for family day care providers**.  An insurer
> that issues or delivers a policy or contract of homeowner's liability
> insurance in the State *shall offer* to provide to a policyholder, who
> is registered as a family day care provider under Title 5, Subtitle 5,
> Part V of the Family Law Article, *coverage of at least $300,000
> for liability that results from bodily injury, property damage, or
> personal injury arising out of an insured's activities as a family
> day care provider.*

Md. Code Ann., Ins. § 19-202 (West 2007) (emphasis added); *see also Gallegos*, 816 A.2d at

103 ("Section 19-202 requires insurers who write *homeowner's* insurance to offer to such

persons general liability coverage of at least $300,000 for injuries arising from family day care

activity.") (emphasis in original).

Defendants argue that the exclusion for automobile related injuries in the Homeowner's

Policy is *limited* as a matter of public policy "to injury sustained while a day care child is a

passenger in the insured's vehicle."  (Def's Mem. Supp. Summ. J. p. 7.)  Defendants reason that

the exclusionary clause can exclude *only* the liability that insurers are required to offer under §

19-106, *i.e.*, liability for bodily injury to a family day care child while the child is a passenger

in an automobile and which arises out of an insured's activities as a family day care provider.  (*See,*

*e.g.*, Def's Reply p. 2.)

In making this argument, Defendants rely on *Gallegos v. Allstate*, 816 A.2d 102 (Md. 2003). In that decision, the Maryland Court of Appeals considered the effect of a motor vehicle exclusion in the context of §§ 19-206 and 19-202. *Id*. at 103. The case arose from the death of two-and-a-half year old boy named Stacy Singer. *Id*. Stacy's daycare provider drove him in her minivan to another house where she was scheduled to perform cleaning services. *Id*. Strapped into his car seat, Stacy was left unattended in the minivan with the windows up. *Id*. The outside temperature that day was above 90 degrees and Stacy eventually died from hyperthermia. *Id*. Ultimately, the insurance company denied coverage on the basis that the daycare provider's Renter's Policy contained an exclusion for "off-site injuries arising from the possession, use, or occupancy of a motor vehicle." *Id*. at 110 n.5.

The precise issue before the Court of Appeals in *Gallegos* was as follows:

> [W]hether § 19-202 permits homeowner's policies containing [home day care] coverage to exclude liability for injury to a child (in this case the death of a child) that occurs (1) while the child is in the care of the insured as part of the family day care activity, but (2) while the child is a passenger in an automobile away from the insured's home.

*Id*. at 103. To answer this question, the Court of Appeals first noted that § 19-202 "says nothing at all, one way or the other, as to whether the coverage offered may contain exceptions or exclusions—in particular, an exclusion for injuries arising from the ownership, use, or occupancy of a motor vehicle." *Id*. at 107. The Court then considered the relevant legislative history:

> Sections 19-202 and 19-106 began life as SB 899 in the 1986 Session of the General Assembly. SB 899 was a departmental bill proposed by the Insurance Commissioner through the Department of Licensing and Regulation. As introduced, the bill would have required insurers writing homeowner's policies to offer to a policyholder registered as a family day care home provider both (1) the option of purchasing coverage for liability as a result of injury arising out of the insured's activities as a family day care

provider, in a minimum amount of $300,000, and (2) the option of purchasing coverage for liability as a result of injury "to a family day care child while a passenger in an automobile arising out of the insured's activities as a family day care provider" in the minimum amount required under § 17-103 of the Transportation Article.

In that form, the bill would have required that the motor vehicle coverage be offered as part of the homeowner's policy. There was considerable evidence presented, in support of the bill, that family day care providers were having great difficulty obtaining and keeping liability insurance at affordable rates. Because of the traditional exclusions in homeowner's policies for injuries resulting from business activities conducted in the home or from off-site motor vehicle accidents, special endorsements were necessary, and many people found them unavailable or unaffordable. Some of the letters from home day care providers focused, at least in part, on the need for motor vehicle coverage, noting that day care providers sometimes transported children to and from school or on field trips of one kind or another.

The Senate Finance Committee took account of the concerns regarding motor vehicle coverage but decided to place the obligation to offer such coverage on motor vehicle insurers rather than on homeowner insurers. Through an amendment to the bill, the Committee deleted the requirement that homeowner's insurers offer that coverage as part of the homeowner's policy and, instead, wrote new language requiring motor vehicle insurers to offer to its policyholders who were registered family day care providers the option of purchasing, as part of the motor vehicle policy, coverage for injuries to day care children while a passenger in the insured vehicle. The bill passed as so amended. . . .

With minor style corrections, the law remained in that form until the enactment, effective October 1, 1997, of the new Insurance Article, which code-revised and reorganized the insurance laws and repealed Article 48A. The Insurance Article split the two provisions of § 481D, putting what was subsection (a) into subtitle 2 of title 19, dealing with homeowner's insurance policies, as § 19-202, and placing subsection (b), dealing with motor vehicle insurance, in subtitle 1 of title 19, as § 19-106. No change was made, or intended, to the substance of the law. *See* Revisors Notes following §§ 19-106 and 19-202 in the 1997 edition of the Insurance Article.

The decision to shift the requirement of offering coverage for off-site injuries resulting from the ownership, use, or occupancy of

> a motor vehicle, as part of a home day care endorsement, from the
> issuers of homeowner's policies to the issuers of motor vehicle
> policies was obviously a knowing and deliberate one on the part of
> the Legislature and is virtually conclusive evidence that it did not
> intend to preclude a motor vehicle exclusion in day care
> endorsements in homeowner's policies.

*Gallegos*, 816 A.2d at 107-108.  The Court of Appeals relied primarily on this legislative history

to conclude that § 19-202 *allows* homeowner's policies to exclude liability for injuries that occur

while the child is a passenger in an automobile away from the insured's home.  *Id*. at 110.

    After reviewing *Gallegos*, this Court finds that there is no basis for concluding that "the

legislative history reviewed in *Gallegos* demonstrates that the motor vehicle exclusion allowed

under the home day care coverage is *limited* to injury sustained while a day care child is a

passenger in the insured's vehicle."  (Def's Mem. Supp. Summ. J. p. 7 (emphasis in original).)

First, *Gallegos* focuses on a different exclusion than the one at issue here.[3]  Second, § 19-202 is

silent with respect to whether homeowner's insurance offered to daycare providers may contain

an exclusion such as the one at bar.  *Cf. Gallegos*, 816 A.2d at 107 ("Section 19-202 . . . says

nothing at all, one way or the other, as to whether the coverage offered may contain exceptions

or exclusions. . . .").

    Third, the legislative history reviewed in *Gallegos* does not suggest that the exclusion for

automobile-related injuries at issue is inconsistent with the relevant legislative intent.  The Court

of Appeals characterized that intent as a decision *not* "to preclude a motor vehicle exclusion in

day care endorsements in homeowner's policies."  *Gallegos*, 816 A.2d at 108.  The Court noted

---

[3]     *Compare Gallegos*, 816 A.2d at 110 n.5 (identifying exclusion as one for "off-site
injuries arising from the possession, use, or occupancy of a motor vehicle" and noting that "we
express no opinion as to whether any of [the other exclusions contained in the policy at issue]
might conflict with the legislative purpose reflected in § 19-202") *with* Homeowner's Policy at p.
H1 (excluding coverage with respect to "bodily injury . . . arising out of the ownership,
maintenance or use of . . . a motor vehicle . . . .").

that the legislative history associated with Senate Bill 899—which resulted in §§ 19-202 and 19-106—focused on daycare providers' concerns with "the traditional exclusions in homeowner's policies for injuries resulting from business activities conducted in the home or from off-site motor vehicle accidents. . . ." *Id*. at 107.  There is no mention that Senate Bill 899 was concerned with the standard exclusion in homeowner's policies for injuries arising out of the use of an automobile.

The Court of Appeals emphasized, moreover, that "even a casual perusal of the Insurance Article will attest [that] the Legislature is not a novice when it comes to regulating insurance companies and practices. . . . It knows well how to mandate coverage and limit or preclude conditions to, exclusions from, and limitations of, coverage."  *Id*. at 108-109; *see also id*. at 107 (Noting that the legislative history reflects "letters from home day care providers focused, at least in part, on the need for motor vehicle coverage, noting that day care providers sometimes transported children to and from school or on field trips of one kind or another.").  Finally, the Court discussed underlying policy considerations in terms that apply to the exclusionary clause at bar:

> Because of the wide availability of automobile liability insurance, and because of the fact that the inclusion of coverage for automobile-related injuries and property damage in insurance contracts providing general liability protection would substantially increase the insurer's risks and would necessitate an increase in the applicable insurance premiums, the general liability coverage afforded by homeowner's insurance policies and by personal liability insurance policies is frequently made subject to a policy exclusion applicable to automobile-related injuries and property damage.

*Id*. at 109 (quoting David B. Harrison, Annotation, *Construction and Effect of Provision Excluding Liability for Automobile-Related Injuries or Damage from Coverage of Homeowner's or Personal Liability Policy*, 6 A.L.R.4th 555, 558 (1981 & Supp. 2001)).

Based on the above considerations, this Court concludes that there is no basis for finding that the legislative history reviewed in *Gallegos* requires invalidating the exclusion at issue here. Accordingly, this Court holds that the Homeowner's Policy exclusion for automobile-related injuries is valid under § 19-106 and § 19-202 of the Insurance Article of the Maryland Code. *See*, *e.g.*, *Jennings v. Gov't Employees Ins.*, 488 A.2d 166, 171 (Md. 1985) (exclusions that do not conflict with legislative policy are permissible).

## II.     Coverage Under Homeowner's Policy.

Having determined that the exclusion for automobile-related injuries in the Nationwide Homeowner's Policy is valid, this Court must consider whether that policy covers a loss that is caused by *covered* as well as *excluded* acts.  In this case, it is agreed that Kaiya's death was caused by two acts: (1) the negligence of Kaiya's daycare provider Mrs. Campbell-Heim, who left Kaiya unattended in the roadway, and (2) Mrs. Campbell-Heim's use of the automobile that struck Kaiya.  There is no dispute that Mrs. Campbell-Heim's negligence in leaving Kaiya unattended is a *covered* risk under the Homeowner's Policy.[4]  By the same token, there is no dispute that the Homeowner's Policy *excludes* coverage for injuries arising out of the use of an automobile.[5]  As a result, the question is whether the Homeowner's Policy exclusionary clause applies where one of the causes contributing to the loss was not within that exclusion.

At the hearing, both sides concentrated their arguments on *Northern Assur. Co. of America v. EDP Floors, Inc.*, 533 A.2d 682 (Md. 1987).  In that case, the Maryland Court of

---

[4]     (*See* Homeowner's Policy at p. G1 (Extending coverage to "an occurrence resulting from negligent personal acts or negligence arising out of the ownership, maintenance or use of real or personal property. . . ."); Home Care Services Endorsement at p. 1 (Extending coverage to "bodily injury . . . arising out of home care services provided by or at the direction of an insured on or from the residence premises.").)

[5]     (*See* Homeowner's Policy at p. H1 (Excluding coverage with respect to "bodily injury . . . arising out of the ownership, maintenance or use of . . . a motor vehicle . . . .").)

Appeals resolved an insurance coverage dispute involving an employer's commercial general liability policy that excluded coverage for "bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of . . . any automobile." *Id*. at 686. The case arose out of injuries suffered by an employee who was in the process of unloading a truck. *Id*. at 684. The injuries resulted from floor tiles that fell off a hydraulic lift at the rear of the truck that was operated by another employee. The lift operator "arrived for work that day with bloodshot eyes; his speech was slurred and he smelled of alcohol." *Id*. at 683. The employer notified both its automobile and general liability insurance carriers and requested a defense. *Id*. at 684. Both insurers disputed the extent of coverage, however, and the employer ultimately brought a declaratory judgment action against its general liability insurance carrier. *Id*. at 684.

The Court of Appeals held that the allegedly negligent unloading of the truck was within "the terms of the policy exclusion which flatly provide that there is no coverage for injuries arising out of the operation or use of a motor vehicle." *Id*. at 688. The Court rested its holding, at least in part, on the meaning of the phrase "arising out of":

> The words "arising out of" must be afforded their common understanding, namely, to mean originating from, growing out of, flowing from, or the like. While these words plainly import a causal relation of some kind, read in context, they do *not* require that the unloading of the truck be the sole "arising out of" cause of the injury; they require *only* that the injury arise out of the unloading of the vehicle.

*Id*. (emphasis added). The Court emphasized that the "arising out of" clause applies "regardless of whether the injury may also be said to have arising out of other causes further back in the sequence of events" and "applies irrespective of the theory of liability by which [the injured party] seeks redress for his injury. . . ." *Id*. at 689. Finally, the Court of Appeals explored the connection between the "arising out of" language and the "instrumentality of the injury":

> As we see it, the language in the exclusionary clause clearly
> focuses the "arising out of" inquiry on the instrumentality of the
> injury, *i.e.*, upon the truck and its unloading.  When, as here, there
> is no ambiguity in the policy exclusion, the first principle of
> construction of insurance policies in Maryland requires that we
> apply the terms of the contract as written.  To apply either a
> proximate or concurrent cause analysis in the interpretation of the
> policy exclusion, as EDP urges, would severely strain its plain
> import and would result in coverage being provided, contrary to
> the intention of the parties, for acts inseparably associated with the
> operation, use or unloading of the truck.

*Id.* (citations omitted).[6]

  *EDP Floors* is also noteworthy for its analysis of *Aragona v. St. Paul Fire and Marine Ins. Co.*, 378 A.2d 1346 (Md. 1977).  In *Aragona*, the Maryland Court of Appeals resolved an insurance coverage dispute involving a lawyer's malpractice insurance policy that covered liabilities "arising out of the performance of professional services for others" but excluded coverage for "any dishonest, fraudulent, criminal or malicious act or omission of the Insured, any partner or employee."  *Id.* at 1347.  The case involved two lawyers—Mitchell Myers and Milton Gordon—who practiced law as a partnership.  *Id.*  Over a three year period, Gordon misappropriated client funds from a partnership escrow account.  *Id.*  Myers was unaware of his partner's conduct.  *Id.*  The clients brought suit against Myers asserting, in Count I, that Myers was vicariously liable for Gordon's dishonesty and, in Count II, that Myers was liable because of his negligent failure to inspect records and discover Gordon's misappropriations.  *Id.*  After obtaining a judgment of $310,000, the clients sought to recover that amount from the malpractice insurer.  *Id.*  The insurer contended that the loss was excluded from coverage because it was

---

   [6] *See also Rubins Contractors, Inc. v. Lumbermens Mut. Ins.*, 821 F.2d 671, 677 (D.C. Cir. 1987) (applying Maryland law) ("The exclusion is framed in terms of the instrumentality causing harm.  Ordinary usage suggests no reason to suppose that the parties intended to qualify the exclusion by introducing a factor to which it makes no reference whatsoever—the theory underlying liability.").

caused by Gordon's dishonesty.  *Id.*  The clients filed a declaratory judgment action to resolve

the coverage dispute.

The Court of Appeals held that "any loss which resulted from any dishonest or criminal

act was excluded from coverage, and that the exclusionary clause of the policy was all-

encompassing in this respect."  *Id.* at 1351.  In *EDP Floors*, the Court described its reasoning in

*Aragona*:

> Finding no ambiguity in the policy language, we defined the issue
> as "whether, in view of the plain language of the policy, the
> exclusionary clause applies where, as here, one of several causes
> contributing to the loss was not within the exclusion."  *Aragona*,
> 378 A.2d at 1349.  After reviewing several cases from other
> jurisdictions, we noted that many courts expressed the grounds of
> their decisions in terms of proximate, efficient, dominant, or direct
> causation; if such causes were within the exclusion, these courts
> held, the policy did not cover the loss.  *Id.* at 1350.  We noted
> further that, employing the language of proximate causation, the
> dishonest act of Myers' partner could be characterized as the direct
> and precipitating cause of the loss and Myers' negligence as merely
> a remote and indirect cause.  *Id.* at 1351.  We made clear, however,
> that our decision holding the policy exclusion applicable rested
> finally, not on a proximate cause analysis, but rather on our
> judgment that, construing the language in the insurance contract as
> a whole, the parties intended any loss resulting from any dishonest
> or criminal act of the insured's partner to be excluded from
> coverage.  *Id.*

*EDP Floors*, 533 A.2d at 688.  The Court of Appeals reemphasized that "the terms of the policy

determine the reach and extent of its coverage.  In this connection, principles of causation will

not be applied to defeat the intent of the parties, as manifested in the insurance contract. . . ."  *Id.*

(quoting *Aragona*, 378 A.2d at 1351).

*EDP Floors* and *Aragona* are instructive in determining whether to apply an automobile

exclusionary clause.  Where, as here, an exclusionary clause contains "arising out of" language,

*EDP Floors* focuses the inquiry on the instrumentality of the injury.  *EDP Floors*, 533 A.2d at

689.  This focus is important as there is no requirement that the instrumentality "be the sole

'arising out of' cause of the injury" in order for the exclusionary clause to apply.  *Id*. at 688. *Aragona* is instructive because it addresses whether an insurance policy covers a loss caused by covered as well as excluded risks where, as here, those risks are "separate and independent." *Aragona*, 378 A.2d at 1348.  In *Aragona*, the covered risk was Myers' negligence in failing to inspect partnership records; the excluded risk was Gordon's dishonesty in misappropriating client funds.  *Aragona* clarified that the proper focus remains on the language of the exclusionary clause, not principles of causation, and stands for the proposition that an exclusionary clause may apply even where one of the causes contributing to the loss was not within the exclusion. *Id*. at 1350; *see also EDP Floors*, 533 A.2d at 688.

Faced with the clear principles of Maryland law set forth in *EDP Floors* and *Aragona*, Defendants urge this Court to follow the reasoning set forth in *West American Ins. Co. v. Hinze*, 843 F.2d 263 (7th Cir. 1988).  While the facts of that case are remarkably similar to the facts of the case at bar,[7] that decision was governed by Illinois law, which is at clear variance with Maryland law.  Indeed, this Court's analysis of *EDP Floors* and *Aragona* is consistent with the interpretation accorded these case by the United States Court of Appeals for the Fourth Circuit in *Cowan Systems v. Harleysvill Mut. Ins. Co.*, 457 F.3d 368 (4th Cir. 2006).  In that case, the Fourth Circuit specifically noted that the principles set forth in *EDP Floors* and another case, *Rubins Contractors*, "stand for the proposition that 'use' of an automobile may trigger the auto exclusion 'regardless of whether the injury may also be said to have arisen out of other causes

---

[7]    In *Hinze*, the United States Court of Appeals for the Seventh Circuit held that a motor vehicle exclusion clause in a homeowner's policy did not exclude coverage for the death of a child.  843 F.2d at 268.  The insured party in the case was Richard Hinze, who was baby-sitting his three-year old grandson, Anthony Paul Ruffino.  *Id*. at 264.  Hinze drove Anthony to an area near Lake Michigan.  *Id*.  After stopping in a storage area, Hinze left the car unattended. *Id*.  The car, with Anthony inside, rolled out of the storage area and into Lake Michigan.  *Id*. Anthony lost his life.  *Id*.  The insurer filed a declaratory judgment action to determine whether the automobile exclusion clause excluded coverage for Anthony's death.  *Id*.

further back in the sequence of events.'" *Id*. at 375 (quoting *EDP Floors*, 533 A.2d at 689); *see also Rubins Contractors*, 821 F.2d at 677 ("The exclusion is framed in terms of the instrumentality causing harm.  Ordinary usage suggests no reason to suppose that the parties intended to qualify the exclusion by introducing a factor to which it makes no reference whatsoever—the theory underlying liability.").

Based on the rulings of the Maryland Court of Appeals in *EDP Floors* and *Aragona*, this Court is compelled to find that the exclusionary clause in the Homeowner's Policy applies to exclude coverage for Kaiya's death.  As noted above, that exclusionary clause provides:

> Coverage E — Personal Liability . . . [does] not apply to bodily injury . . .
>
> g)    *arising out of* the ownership, maintenance or use of, or loading or unloading of; entrustment or negligent supervision by an insured of; or statutorily imposed liability on an insured related to the use of: . . .
>
> (2)    a motor vehicle or all other motorized land conveyance owned by or operated by, or rented or loaned to an insured.

(Homeowner's Policy at p. H1 (emphasis added).)  This clause obviously contains the "arising out of" language addressed in *EDP Floors* and, therefore, this Court must focus its inquiry on the instrumentality involved in Kaiya's death, *i.e.*, Mrs. Campbell-Heim's use of her automobile.  There is no reasonable dispute that the use of the minivan by Mrs. Campbell-Heim is an "arising out of" cause of Kaiya's death.  (*See* Stipulation of Facts at ¶ 8 ("Kaiya Alexis Bryant, who was left unattended in the roadway at 2412 Beaver Crossing Court, Edgewood, Maryland, was struck by Mrs. Campbell-Heim's vehicle causing serious bodily injuries that ultimate [sic] proved to be fatal.").)  Accordingly, this Court is compelled to conclude that the automobile exclusionary clause in the Homeowner's Policy excludes coverage in this case.  *EDP Floors*, 533 A.2d at 688-89.

This Court has also considered Defendants' argument that this case is distinguishable

from *EDP Floors* on grounds that the negligence at issue here (failure to supervise Kaiya) does

*not* depend upon the excluded risk (use of an automobile) whereas the negligence in *EDP Floors*

(negligent hiring of an employee) *depends* on the excluded act (unloading of the vehicle).[8]  This

argument, however, fails for reasons set forth in *Aragona*.  In that case, the negligence (failure to

inspect partnership records) also did *not* depend upon the excluded act (dishonesty in

misappropriating client funds).  The Court of Appeals nevertheless held that coverage was

excluded:

> That Myers may have been liable for his negligence to the
> Aragonas does not determine whether his liability is within the
> coverage of the policy; the terms of the policy determine the reach
> and extent of its coverage.  In this connection, principles of
> causation will not be applied to defeat the intent of the parties, as
> manifested in the insurance contract . . . general definitions of
> proximate causation afford little aid in determining whether a
> particular loss was intended to be covered under the insurance
> policy.

*Aragona*, 378 A.2d at 1351 (citation omitted); *see also EDP Floors*, 533 A.2d at 687

(considering "the view taken by a number of courts that when vehicle use and nonvehicle use

factors contribute to an injury, these separate factors are to be regarded as *concurrent* and

independent causes") and 688 (concluding that "[t]hese arguments are *unconvincing* in light of

the terms of the policy exclusion which flatly provide that there is no coverage for injuries

arising out of the operation or use of a motor vehicle. . . .") (emphases added).

---

[8]      (*See* Defs' Mem. Supp. Summ. J. p. 14 (This is a case, unlike *EDP*, where the
vehicle use component is *not* essential to establish the insured's liability.  The 'instrumentality'
theory, therefore, does not apply.  If the vehicle use component were excluded, the provider still
has liability (negligent care of her charge) for which Nationwide is responsible.") (emphasis in
original); *see also id*. at p. 15 ("Unlike *EDP*, the day care provider's negligent supervision *of the
victim* is a cause of action entirely separate and distinct from her negligent operation of her
motor vehicle.") (emphasis in original).)

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (Paper No. 6) is GRANTED and Defendants' cross-Motion for Summary Judgment (Paper No. 8) is DENIED.  A separate Order and Judgment follows.

Dated: June 18, 2007                              /s/_____
                                                  Richard D. Bennett
                                                  United States District Judge